v. Darryl R. Blanton Mr. Carpenter, are you ready to proceed? I am, Your Honor. And you reserve the Prime Minister's time for rebuttal, correct? Yes, I do. Okay, you may go ahead, please. May it please the Court, Kenneth Carpenter appearing on behalf of Mr. Darryl Blanton. I'd like to begin the argument by discussing this Court's en banc decision in Cook, specifically that that en banc decision by this Court did not have cause to, nor did it, interpret the provisions of 38 U.S.C. 5109 A. The Court in Cook did not rely upon an examination of Russell to demonstrate why the prior decision in Hare should be overruled on the basis that it remained pending. In Cook, the Court applied the law of cue as it understood it to be based upon the very issue that is being presented by this Court, which is whether or not that is or is not a holding in the Russell case and its subsequent progeny as to the question of the requirements to establish a claim of clear and unmistakable error. The issues in Cook were whether or not to overrule the decision in Hare, the grave procedural error, and whether that renders a decision non-final by the Department of Veterans Affairs, and secondly, whether or not if Hare is overruled, can the duty to assist constitute a violation of, excuse me, constitute clear and unmistakable error under the statute as written. Although the decision in Cook... Counselor Carpenter? Yes, Your Honor. This is Judge Rayner. It seems to me that the argument that you're raising, that we've addressed it and the argument has been, was rejected in the Cook case. Why is it that's the case here? Well, as I was explaining, Your Honor, it's not the case because the Cook case did not have occasion to examine the language of the statute. The Cook case only examined the existing understanding of clear and unmistakable error as represented by Russell and its progeny. The discussion in Cook was not necessary to address the question of the interpretation of the statute as is being asked by Mr. Blanton in this case. You're saying that the portion of the Cook case that would arguably apply to your case is just dicta? Yes, Your Honor, it is. Because it relies upon dicta. And that is the very point of law that is presented by Mr. Blanton's appeal, whether or not the holdings or presumed, prior presumed holdings in Russell and its progeny, including Cook, constitute dicta, because there was nothing required in the Russell case for the discussion of or the establishment of the very specific requirements that were extracted from the then language of the regulation at 3.105 parens A. And the question in Cook was only about whether or not this court should or should not overrule error and whether or not a duty to assist violation could constitute it given the current understanding of the law. And at that point, everyone accepted the proposition that Russell was properly decided and that when Congress adopted essentially the exact language from the regulation, that that same case law would apply equally to the statute, which is essentially the discussion of 5109 capital A in Cook by the en banc decision. Mr. Carpenter? Yes, Your Honor. Judge Shulman. Yes. At 1345 of Cook, we stated, we conclude that decisions of this court and the Veterans Court concluding that a clear and unmistakable error at the R.O. level must be outcome determinative and must be apparent from the evidence of record at the time of the original decision are supported by the language of the statute and its legislative history. And then subsequently in the Wilsey case, at page 1371, we stated the rule of law for is stated in decisions of the Veterans Court. And we went on from there. We quoted the test was subsequently adopted in substance in Cook v. Principi. And you could also, I think, look at Natale and Morris. I mean, don't, let's assume that Russell, the language, what, without deciding, let's assume it was dicta. Would we not have to urge our colleagues? Would not Judge Reyna and Judge Stoll and I have to recommend that this case be taken in bank in order to achieve the result you want, because we'd have to be overturning all these cases of ours? Well, I certainly think that that is a alternative for this panel. However, if the panel accepts the proposition that the language in Russell, which is the Cook decision about outcome determinative, et cetera, was dicta, then dicta relying upon dicta does not repeat a holding. Let's assume, let's assume you're right, that it is dicta, okay? Yes. Wouldn't we not be then in the position where, as a court, we have said, we're adopting that statement? And something can be dicta, but then if a higher court comes along and says, we adopt that as a rule of law, it's now removed from the dicta if it was that. So what difference does it make? If we have adopted the rules stated in Russell as the rule of our court, what difference does it make that it was dicta in Russell? Because of the fundamental concepts of stare decisis. The purpose of stare decisis is to hold to prior rulings. The prior ruling in Russell was flawed. It was flawed because the litany of standards that were articulated that are especially onerous and difficult for a veteran to meet are not standards that are reflected in the regulation and now the statute. I am asking this court in this appeal... But then later, Mr. Carpenter, later in Cook, we said that it was in line with the statute. It was in line with the statute and the legislative history. And what I'm suggesting to you, Your Honor, that it can only be in alignment if the underlying dicta, which is not stare decisis, is accepted as a holding. And that what I'm asking in this case is for this court to look to the plain language of the statute and see if there is any possible way that the standards can be extrapolated from that language. Specifically, when the only thing that is clear and precise in the language of the statute is that it calls upon the submission of evidence to establish a clear and unmistakable error. None of these legal standards articulated in Russell and I will stipulate were adopted in Cook relate to the submission of evidence. Well, now in Cook, we said that we set the requirement that the error be outcome determinative and apparent from the evidence at the record at the time of the original decision. We said this is supported by the language of 5109A and its legislative history. So we've already made this statutory interpretation that you're asking us to take up. Well, I respectfully disagree, Your Honor, and I respectfully disagree that that was necessary for the two issues that were presented to the en banc court. That the notion of those principles in Russell had nothing to do with whether or not the full court should overrule the decision in Heer. And then once overruled, go to the question not of the legal standards that were articulated, but what a subsequent expansion of the Russell Doctrine did, which was to say that the duty to assist is a bar to a claim of clear and unmistakable error. Mr. Carpenter, as a settled prudential matter, in order to achieve the result you want, doesn't this issue have to go in bank to the full court? Would we not have to say? Would we not, given the fact of Cook and the other cases that I mentioned that you know of, would the only way we could change, achieve the result you want, would be for this panel to recommend to the full court that the case be taken en banc to overrule Cook and other cases following it, right? Yes, Your Honor, and I do not mean to protest against that action. I am simply trying to clarify in response to the questions from the panel. I think you have to embrace that action. It's the only way one can arrive at the result you want. That I fully embrace it, Your Honor. Please do not allow my digressions to be perceived as not embracing that view. Okay, I believe I heard the timer go off. Is that correct? I didn't. Okay, continue. I'm sorry, I didn't hear. Okay. You may continue. Oh, okay. Well, actually, Your Honor, I think this is probably a fairly decent stopping point. I think everything else that I have simply dovetails with why this panel should recommend to the full court that this issue be reconsidered by the full court based upon the question of whether or not the language in Russell is dicta and whether or not the language in Cook potentially is dicta as well and whether or not, based upon the plain language of the question, the full court should reconsider this matter. Okay. All right, we thank you for that. Counselor Grobbins? Are you ready? Yes, Your Honor. Okay. Did I pronounce your name correctly? Yes, Your Honor. Eric Grobbins on behalf of the Secretary. All right. You may proceed, please. May it please the court, the decision below should be affirmed for three reasons. First, before the Q challenge even is addressed, the court should decline to take it up in the first place because Mr. Blanton did not raise it below. Mr. Blanton pursued his Q claim for about 14 years in the regional office, the board, and then the veterans court. And it wasn't until he filed his brief here when Mr. Blanton made any mention of this challenge to the interpretation of the Q statute. So just on that basis alone, the decision below should be affirmed. But second, even if the court reaches Mr. Blanton's challenge to the Q framework, I In that case, the court considered the precise arguments that Mr. Blanton raised. Like Mr. Cook in page 1344, Mr. Cook advances three arguments in support of his position. First, he contends that requiring the Q analysis to be conducted on the record as it existed at the time of the original decision is flawed. He urges that the requirement that the error must be outcome determinative is also flawed. So the court has already seen this episode. And sitting on bunks, it's decided that the existing Q framework is consistent with the statute to address these precise questions. And simply put, there's been nothing, no change in the jurisprudence or no change in the statute that would tell the court to reconsider this decision now. And finally, I just want to address a final argument that he makes about an inconsistent pleading standard requirement. That's not what the Veterans Court determined at all. Mr. Blanton, in that forum, raised a new argument in support of his Q claim. And the Veterans Court simply applied its issue exhaustion law to the facts of that case and determined that its institutional interests outweighed Mr. Blanton's interest in having an argument adjudicated when given that the argument was unclear and undeveloped to the Veterans Court. Basically, because Mr. Blanton shows no error, the decision below should be a fair and unconfirmed. Given Mr. Blanton's concession that this court would need to take the case up on bunks to revisit the Q framework, there's really not much else to explain. The point of whether or not it's dicta, again, is irrelevant because the court's already taken up these positions. It's not like it blindly applied some framework. It conducted an independent analysis of the precise questions that were raised here. Finally, I guess the other point I want to make is just the pure existence of Q as a set of methods that come with demonstrating a Q already reflect the benevolent statutory and regulatory framework that governs veterans' claims. In pretty much most all other scenarios, an administrative decision that's not appealed is final. It's binding, and you can't reopen it. The fact that you can reopen it in this context already reflects the special treatment given to veterans. Essentially, what Mr. Blanton's arguing is that there should be no finality requirement. There's nothing in the statute or the regulation that would support basically the elimination of a finality requirement. All right. Anything else? No, Your Honor, not unless the panel has any questions. Judge Stold, any questions? I have no questions. I have no questions. Thank you. Okay, counsel. We thank you for your argument. Let's hear back from Mr. Karpin. May it please the court, I'd like to use the remaining five minutes that I have or whatever time I have left to discuss the reasons why this panel should refer this matter to the full court. I think it begins with an analysis of what the provisions of 3.105A were in 1992 and had been since its inception, and that is that they were remedial. They were intended to correct a mistake made by the VA in its adjudication, specifically a denial. Mr. Karpin? Yes, Your Honor. You raised this argument as the legal basis for even our jurisdiction. We can't consider fact issues, as you know, and we can review questions of law dealing with statutory interpretation. Now, have you ever made this argument before in other cases, this same argument? I know I have made it before, Your Honor. I cannot recall whether or not that has ever gone to a panel of either court at this moment. I'm sorry. I just don't recall. Well, if you had made it before this court and had won on the issue, you certainly would remember. I would think. I most certainly would, Your Honor. I apologize. I meant simply that I do not recall having specifically made the remedial purpose argument. Well, it just seems to me that your argument doesn't have much legs. You're asking us to make a certain number of assertions or findings with respect to our prior rulings. You put up stare decisis as, you know, at work for you as something to your advantage between. Actually, I think it stare decisis to your disadvantage. You're asking us to overrule long-established law that we've applied in many cases, and it seems that this argument has already been raised and considered by this court. Well, Your Honor, with all due respect, I was counsel in Cook, and the arguments that were presented in Cook were in relationship to the two specific questions that were presented by the full court to counsel for both sides, which had to do with... You've already challenged this particular statute making these arguments, these same arguments. With respect, Your Honor, I did not. What this argument is about is what the language of both the regulation and the statute say, and that you cannot extrapolate from that language, which talks in terms of evidence, to mean that there are these onerous legal standards that were articulated in Russell. And in particular, I would point the court's attention to the fact that in the same regulation that is the predecessor regulation for 3.105A is 3.105B. And 3.105D is the opposite side of the same coin in which the secretary is afforded the opportunity by clear and unmistakable error to sever a grant of service connection. But in the secretary's own language, the secretary allows himself to present evidence that was not of record at the time. And I presume that was my warning that I am out of time. Yes. Okay. We thank you, Mr. Carpenter. We thank all the parties for their arguments. This case is now submitted.